**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 14-03226-JW |
| | Chapter 13 |
| Thomas Leroy Love and Kimberly S. Love, | |
| Debtor(s). | |

**ORDER DENYING DEBTORS' MOTION TO SELL REAL PROPERTY**

This matter comes before the Court on the motion of the debtors Thomas Leroy Love and Kimberly S. Love (collectively "Debtors"), seeking authority, pursuant to 11 U.S.C. § 363,[1] to sell the estate's interest in five (5) acres of real property located at 3752 Humbert Road, Johns Island, SC, TMS No. 250-00-00-160 ("5 Acres").  Nationstar Mortgage, LLC ("Nationstar") filed an objection to the relief requested by the Debtors.

After considering the arguments of counsel and the evidence presented, including the testimony of the Debtors' expert witness David McCall, as well as the pleadings and applicable law, the Court denies the relief requested by the Debtors, making the following findings of fact and conclusions of law:[2]

**FINDINGS OF FACT**

1. The Debtors filed a petition under Chapter 13 of the Bankruptcy Code on June 2, 2014.

2. The 5 Acres that is the subject of the Debtors' motion is comprised of five (5) acres out of a larger, 22 acre parcel of land owned by the Debtors ("Entire Parcel").  Fifteen acres of the

---

[1] Hereinafter, all references to provisions under the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, shall be by section number only.

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

1

Entire Parcel is vacant land, and the remaining seven (7) acres contains the Debtors' principal residence, a barn, pool, and two ponds.

3. Nationstar is the holder of a secured claim against the Debtors in the amount of approximately $503,000. Nationstar's claim is secured by a first mortgage lien on the Entire Parcel. Nationstar's interest in the Entire Parcel, including the 5 Acres, is not in dispute.

4. On August 26, 2014, the Court entered an order confirming the Debtors' Amended Chapter 13 plan filed July 17, 2014 ("Debtors' Confirmed Plan").

5. With respect to Nationstar's claim, the Debtors' Confirmed Plan provides that the Debtors' will cure the pre-petition arrearage by making payments of $700 per month, at 0% interest, through the Chapter 13 Trustee. The Debtors' Confirmed Plan further provides that the Debtors will resume making their regular monthly mortgage payments directly to Nationstar commencing with the payment due July 2014.

6. Section III.A of the Debtors' Confirmed Plan, which describes payments to be made by the Debtors to the Chapter 13 trustee, contains the following non-standard language regarding the Entire Parcel:

> *Further, Debtors shall tender net non-exempt proceeds from the sale of their real property, either the 15 acre undeveloped parcel or the 7 acre parcel where the personal residence is located, to the Trustee within twenty four (24) months after entry of the order confirming Plan. Debtors shall be entitled to an additional twelve (12) month time period to sell the property, provided that proof, satisfactory to the Trustee, of the prospects for sale of the property is shown to Trustee. In the event the property has not sold and debtor cannot show reasonable prospects for a sale, the Debtors shall amend their plan to provide for monthly installments sufficient to adequately fund their Plan.*

*See* Debtors' Confirmed Plan at 2.

7. On February 19, 2015, pursuant to the Debtors' request the Court entered an order authorizing loss mitigation/mediation.

2

8.  After the Debtors failed to comply with the terms of a Settlement Order entered on February 18, 2015 by failing to make mortgage payments due from July 2014 through March 2016, Nationstar obtained relief from the automatic stay on April 11, 20016 to enable it to pursue its non-bankruptcy remedies against the Entire Parcel.

9.  On August 21, 2015, the Debtors' counsel filed a Mortgage Loan Modification Report, wherein she reported that loss mitigation/mortgage modification was denied or had failed.[3]

10. The Debtors' Motion seeks authority from the Court pursuant to § 363 to sell the 5 Acres to an adjacent landowner for a gross sale price of $100,000 ("Sale Proceeds").[4] The Debtors propose to tender the Sale Proceeds to Nationstar for Nationstar to apply to any past due payments. The Debtors further propose that, in exchange for its receipt of the Sale Proceeds, Nationstar be required to release its lien on the 5 Acres, but be permitted to retain its lien on the remainder of the Entire Parcel.

11. It is undisputed that the Sale Proceeds are insufficient to pay the Nationstar debt in full. It is unclear from the record whether the Sale Proceeds will be sufficient to cure the arrearage.[5]

12. The Debtors assert that if approved, the proposed transaction would enable them to substantially reduce the deficiency, would increase the marketability of the remainder of the

---

[3] The Report indicated that, after the Debtors' information was uploaded into the portal, Nationstar advised that it needed a profit and loss statement for Debtor Kimberly Love's business. A statement was provided; however, it was not provided in the proper format. The Debtors were given a sample form for a profit and loss statement, but the Debtor did not provide a revised profit and loss. Additionally, counsel reported that bank statements were also missing. Consequently, Nationstar advised that the request for Loss Mitigation has been denied due to the failure of the Debtors to provide the documents requested.

[4] Although the Debtors have indicated that no commission will be paid to the realtor from the proceeds, it is not clear from the record if any other customary fees and expenses chargeable to a seller will be deducted from the gross sale price.

[5] At the hearing, counsel for the Debtors advised the Court that in proposing this transaction, the Debtors were not attempting to have the loan reinstated, or to stop or delay the pending foreclosure proceeding.

Entire Parcel and facilitate their efforts to sell the same, all while leaving a sufficient equity cushion to protect Nationstar's interest in its collateral.

13. No evidence was introduced as to the current balance due Nationstar, although Nationstar's proof of claim filed on August 27, 2014, indicates a balance due of $497,039.29. Additionally, no evidence was introduced as to the value of the Entire Parcel or the exact amount of Nationstar's arrearage. However, the parties agree that there is equity in the Entire Parcel over and above Nationstar's lien.

14. Counsel for the Debtors indicated that whether or not the Motion was granted, the Debtors do not intend to either retain or remain in possession of the Entire Parcel; rather, they will to give up the property at the conclusion of the foreclosure process. Counsel advised the Court that she believed that the Debtors only had six (6) more payments to complete payments to the trustee under the Confirmed Plan.

15. In support of the Motion, the Debtors presented the testimony of David McCall, a real estate broker/land developer. Mr. McCall's testimony indicated that he was very familiar with the Entire Parcel and the proposed transaction. Mr. McCall testified that despite their efforts to sell the Entire Parcel intact, the Debtors have been unable to obtain a purchaser for the Entire Parcel. Mr. McCall further testified that, in his view, the value of the Entire Parcel would not be diminished by the proposed sale but rather, the sale of the 5 Acres would likely result in increased marketability for the remainder of the Entire Parcel.

16. Nationstar voiced numerous objections to the relief requested by the Debtors. First, it disputes the assertions that severance of the 5 Acres from the Entire Parcel will increase the value and marketability of each of the parcels. Second, despite the Debtors' proposal to tender the Sale Proceeds to be applied to the arrearage, Nationstar maintains that the account will still

4

be delinquent (although the extent of the shortfall is unclear). Finally, Nationstar argues that it has obtained relief from the automatic stay and is entitled to continue to pursue its state law remedies against the Entire Parcel.

17.     Nationstar introduced no evidence or testimony in support of its arguments, relying instead on the arguments of counsel.

## CONCLUSIONS OF LAW

Although the automatic stay has been modified to permit Nationstar to bring the foreclosure action, the Entire Parcel is still an asset of the estate. 11 U.S.C. § 541. Thus, before selling any property of the estate, the Debtors[6] first must obtain leave of the Court, giving notice to all proper parties. 11 U.S.C. § 363; *see also* Fed. R. Bankr. P. 2002 and 6004. The Debtors apparently seek permission to sell the 5 Acres pursuant to §§ 363(b) and (f).

Section 363(b) permits the sale of property of the estate other than in the ordinary course of business. To gain court approval of a sale pursuant to § 363(b), the Debtors must demonstrate that a sound business reason exists for the sale, and that the sale is made in compliance with the business judgment rule. *In re Derivium Capital, LLC*, 380 B.R. 392 (Bankr. D.S.C. 2007); *see In re Pervine, 2016 Bankr. Lexis* 712 (Bankr. E.D.N.C. 2016). The Court must scrutinize the proposed transaction to ensure that the transaction is fair and reasonable, that the maximum value is being recovered, and that "the decision to sell is made on an informed basis, in good faith, and in the honest belief that the sale is in the estate's best interest." *In re Shipman,* 344 B.R. 493, 495 (Bankr. N.D. W. Va. 2006).

The Court believes that the Debtors have met their burden under § 363(b). Based on the record before it, it appears to the Court's satisfaction that a sound business reason exists for the

---

[6] Pursuant to § 1301, a chapter 13 debtor has the rights and powers of a trustee under § 363.

dividing of the Entire Parcel for the purpose of the sale of the 5 Acres as contemplated by the Debtors' motion. The Court is not convinced by Nationstar's argument that the value of the Entire Parcel will be reduced by the proposed transaction, particularly in light of the uncontroverted testimony of Mr. McCall regarding the history of the Entire Parcel, the appeal of the 5 Acres to the prospective purchaser, and the positive impact that the reduction in price for the remainder of the Entire Parcel would have its marketability.

Were compliance with § 363(b) the only matter to be considered, the inquiry would end here. However, because the Debtors are seeking a release of Nationstar's lien on the 5 Acres and Nationstar objects, the Debtors must also rely on § 363(f) for the authority to transfer the 5 Acres free and clear of all liens and interests.

Section 363(f) provides:

The [debtor] may sell property under [§ 363(b)] free and clear of any interest in such property of an entity other than the estate only if —:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The Debtors seek to sell the 5 Acres free and clear of Nationstar's lien for a price that is less than the value of Nationstar's lien on the Entire Parcel. Nationstar's lien is not in dispute, nor is the fact of the Debtors' default. Nationstar does not consent to the transaction and, absent its

6

consent, no applicable non-bankruptcy law has been identified that would permit the sale of the 5 Acres free and clear of Nationstar's mortgage.

In light of these facts, § 363(f)(1), (2), (3), and (4) appear inapplicable. Thus, the proposed transaction may be authorized over Nationstar's objection only if the Debtors can prove that it can be authorized under (f)(5).

As recognized by other courts, "the meaning of paragraph (5) is anything but plain." *Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW, LLC*), 391 B.R. 25, 35 (9th Cir. B.A.P. 2008). "Competing constructions seem to render [paragraph 5] so specialized as to never be invoked, or all powerful, subsuming all the other paragraphs of § 363(f). *Id.* at 26; *see also* Brad B. Erens and David A. Hall, *Secured Lender Rights in 363 Sales and Related Issues of Lender Consent*, 18 Am. Bankr. Inst. L. Rev. 535, 546 and n.60 (2010); David G. Epstein, *et al.*, *Bankruptcy*, § 4-7 at 402 (West Pub. Co. 1992).

For example, some courts have adopted a restrictive definition of the term "interest," holding that the term was not intended to apply to liens, but only to other types of interests in property. *See, e.g., In re Canonigo*, 276 B.R. 257, 265 (Bankr. N.D. Cal. 2002). Other courts have rejected a narrow construction of the term "interest" in favor of a more expansive reading. *See, e.g., Clear Channel Outdoor,* 391 B.R. at 37-39.

Likewise, while it seems relatively well settled that the phrase "could be compelled," within the context of § 363(f)(5), contemplates a "hypothetical proceeding,"[7] in which the lender could be compelled to accept a monetary satisfaction of its interest, (*Secured Lender Rights*, *supra*)*,* there is a dispute over the whether the movant need only "show that it is theoretically possible to compel a party to accept a money satisfaction of its interest," (*In re Haskell, L.P.*, 321 B.R. 1, 9

---

[7] *I.e.* the proceeding does not actually have to take place.

(Bankr. D. Mass. 2005)), or if the trustee or debtor must prove that there is a hypothetical proceeding that could be brought by the trustee or debtor. *Compare In re Jolan*, 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009) (mere existence of a state law process that would allow an entity other than the debtor or trustee to compel a lienholder to accept a money satisfaction for an amount less than what is owed to the lienholder qualifies as a "legal or equitable proceeding" under § 363(f)(5)), *with In re Ricco, Inc.*, 2014 Bankr. LEXIS 1265, *11 (Bankr. N.D. W. Va. 2014) (citing *In re Haskell, L.P.*, 321 B.R. 1, 9 (Bankr. D. Mass. 2005) ("'the only logical interpretation of . . . § 363(f)(5) is that the statute requires that the trustee or debtor be the party able to compel monetary satisfaction for the interest which is the subject of the sale.'"), *and In re Smith*, 2014 Bankr. LEXIS 779 at *8-10 (Bankr. D. Or. Feb. 26, 2014) (finding that the movant must prove that there is "at least the possibility of an available" proceeding that could be brought by the movant in which a court could compel the release of the lien for less than full value).

The Court agrees with the view of those courts that believe that "the hypothetical proceeding" contemplated by § 363(f)(5) "needs, at the very least, to be legally possible." *In re Scott*, 2011 Bankr. LEXIS 4613, *8 (Bankr. E.D. Mich. June 29, 2011); *accord In re Ferris Props.*, 2015 Bankr. Lexis 2554, *4 (Bankr. D. Del. 2015) ("sale proponents must do more than show that it is theoretically possible to compel a creditor to accept a money satisfaction under [(f)(5)]."); In *re Harris*, 2011 Bankr. LEXIS 4480, *7-8 (Bankr. E.D. Mich. Nov. 7, 2011). The Court also agrees with the narrow interpretation of § 363(f)(5), which requires that a trustee or the debtor (as opposed to another entity) be the party able to bring the hypothetical proceeding. *See In re Ferris Props.*, 2015 Bankr. Lexis 2554, *4; *In re Ricco,* 2014 Bankr. LEXIS 1265, *11 (Bankr. N.D. W. Va. 2014); *Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696 (Bankr. S.D.N.Y. 2014); *In re Haskell, L.P.*, 321 B.R. at 1; *see Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994)

8

(lienholder "must be able to be 'compelled' to accept money damages in lieu of equitable enforcement before [paragraph 5] will apply.") Beyond this, it is not necessary for the Court to further analyze paragraph 5 because under this set of facts, the Debtors cannot meet their burden of proof.

In support of their request for relief under § 363(f)(5), the Debtors initially rely on the state court foreclosure action commenced by Nationstar. The Debtors point to the fact that Nationstar has obtained stay relief and commenced a foreclosure action in which it has waived the deficiency. In the foreclosure action, they argue, Nationstar can be compelled to accept money satisfaction of its lien even if the foreclosure sale price of the property is less than Nationstar's debt.

Unfortunately, the Debtors' analysis is incorrect. First, it ignores the fact that the action in question was brought by Nationstar. Nationstar is not seeking to extinguish its lien; rather, it is seeking to enforce its lien and realize on its collateral. A bank's voluntary foreclosure of its lien is fundamentally different from a proceeding reducing or eliminating the lien over the bank's objection.

Additionally, the element of "compulsion" contemplated by paragraph 5 is absent. According to counsel for the parties, the Debtors are in default in the foreclosure action. Thus, until the property is sold, Nationstar retains the ability to ask that the property be pulled from the sale, as well as the ability to dismiss the foreclosure action. Furthermore, under South Carolina law and the facts of this case, in this foreclosure Nationstar has significant control over the sale price of its collateral. Having waived the deficiency, Nationstar is not limited to one bid at the foreclosure sale. Rather, it has the ability to ensure, by credit bidding its entire debt, the Entire Parcel is not sold for less than the entire amount of its debt. *See generally* SCRCP 71(b); S.C.

Code. Ann. § 15-39-720.  Substitution of the chapter 13 trustee or the Debtors as the plaintiffs in a foreclosure action does not change the outcome.

Aside from Nationstar's foreclosure action, the Debtors were unable to point to any other hypothetical legal or equitable proceeding to support relief under (f)(5).  The Court was also unable able to find a feasible hypothetical alternative proceeding, under either South Carolina or Federal law that would enable the Debtors to compel the extinguishment of Nationstar's lien.

The Debtors' final arguments in support of the Motion are styled in the nature of waiver and release.  The Debtors maintain that Nationstar has previously agreed to release portions of the Entire Parcel to allow a sale and therefore, its objection should be overruled.  The Debtors also argue that their confirmed chapter 13 plan contemplated a possible sale of 7 or 15 acre parcels, and therefore once confirmed, Nationstar cannot now object to the sale.

However, after a complete review of the record, the Court cannot identify where Nationstar either agreed to release its lien on the 5 Acres for less than payment in full of its debt or agreed to the transaction before the Court.  In the Debtors' Confirmed Plan, the Debtors' proposed to cure the arrearage and maintain direct monthly payments as the means of providing for Nationstar's secured claim.  The only reference to a possible sale of the Entire Parcel appears in Section III, which indicates how payments to the trustee may be funded in the event a sale is authorized.  Otherwise, Debtors' Confirmed Plan contains no other details regarding this sale.  Notably absent from the plan is a discussion of a sale price or a specific description of the property to be sold.  Nor does the Debtors' Confirmed Plan disclose the Debtors' intent to pursue a piecemeal liquidation of the collateral over Nationstar's objection, or to ask Nationstar to release a portion of its collateral for less than payment in full of the debt.

10

In addition, in this Court's view, the plan does not provide sufficient notice that the Debtors' may divide and sell portions of the Entire Parcel over Nationstar's objection and obtain a release of the lien. Therefore, confirmation of the July 2014 plan does not constitutes a release or waiver, or *res judicata* of the issue of a sale in this matter.

## Conclusion

The Court is not unsympathetic to the Debtors' request. The Court understands the logic behind the Debtors' motion, and recognizes and acknowledges the financial benefit that would accrue to both the Debtors and Nationstar if the proposed transaction were approved. However, the Court is limited by the constraints of the Bankruptcy Code, applicable state law, and the facts in the record, all of which leaves the Court with no alternative but to deny the relief requested by the Debtors.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
July 8, 2016

**FILED BY THE COURT**
**07/08/2016**



US Bankruptcy Judge
District of South Carolina

Entered: 07/08/2016